**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

CONTINENTAL WESTERN INSURANCE COMPANY,

Plaintiff,

SLOAN ELECTRIC, INC., JAMES L. SLOAN d/b/a SLOAN ELECTRIC; and STONECROFT OF MENDOTA, LLC,

Defendants.

Case No.:

FILED: JUNE 05,2008
08CV3260
JUDGE ST.EVE
MAGISTRATE JUDGE BROWN

DAJ

**COMPLAINT FOR DECLARATORY JUDGMENT**

Continental Western Insurance Company ("Continental Western"), by its undersigned attorneys, for its Complaint for Declaratory Judgment, states as follows:

**Jurisdiction and Venue**

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states, and the amount in controversy exceeds $75,000.

3. Venue is proper in the Northern District of Illinois, as the insurance policy at issue was issued to an Illinois insured who resides in the Northern District and the events referred to in the underlying complaint occurred in the Northern District.

4. Continental Western is an Iowa corporation with its principal place of business in Des Moines, Iowa.

5. James L. Sloan d/b/a Sloan Electric ("Sloan Electric") was a sole proprietorship that had its principal place of business in Illinois. James L. Sloan is citizen of Illinois.

6. Sloan Electric, Inc. was an Illinois corporation with its principal place of business in Illinois. Sloan Electric, Inc. was voluntarily dissolved on March 31, 2004.

7. Stonecroft of Mendota, LLC ("Stonecroft") is a Wisconsin limited liability company with its principal place of business in Wisconsin.

**The Underlying Complaint**

8. On March 6, 2006, Stonecroft filed a complaint against Sloan Electric, and James Sloan, individually, and doing business as Sloan Electric, in the Circuit Court of Dane County, Wisconsin, Case No. 2006CV0719. Attached hereto as Exhibit A is a true and accurate copy of the complaint.

9. Stonecroft alleges that it contracted with Professional Realty and Development Corporation ("PRDC") for PRDC to serve as developer and general contractor for a senior housing project Mendota, Illinois.

10. PRDC entered into a subcontract dated August 14, 2000, with Sloan Electric.

11. Stonecroft alleges that in the subcontract, Sloan Electric warranted that it would "comply with laws, ordinances, rules, regulations and order (sic) of public authorities bearing on performance of the Work of this Subcontract."

12. It is further alleged that Sloan Electric warranted that its work would be "free from defects not inherent in the quality required or permitted, and that the work will conform to the requirements of the Subcontract Documents."

13. Stonecroft alleges that PRDC hired an electrical inspector to inspect Sloan Electric's work, and that on March 9, 2001, the inspector reported that there were many serious and dangerous defects in the electrical work, including 39 types of building and fire violations of the National Electrical Code that were present in each of the building's 56 units.

14.    It is alleged that the majority of the code violations were in locations that had already been covered up by drywall, resulting in the necessity of performance of substantial rework to correct the code violations.

15.    Stonecroft alleges that it hired a substitute subcontractor to complete Sloan Electric's work, and that it took 1,161 man hours and five months, at a cost of $258,195 to correct Sloan Electric's failure to comply with the National Electrical Code.

16.    In Count I, Stonecroft alleges injury to real property as a result of Sloan Electric's failure to comply with applicable building codes.

17.    In Count II, Stonecroft alleges that Sloan breached its duty to Stonecroft by failing to perform the electrical work in a workmanlike manner and free from defects.

18.    In Count III, Stonecroft alleges that Sloan Electric breached its implied warranties to Stonecroft that its work would be of a workmanlike quality, free of defects, and compliant with applicable building codes.

19.    In Count IV, Stonecroft alleges intentional, strict and negligent misrepresentation and fraudulent concealment in that Sloan Electric misrepresented that it was a competent electrical contractor familiar with electrical codes, and fraudulently concealed its building code violation and non-workmanlike work in areas that were not open, exposed and accessible.

**Continental Western Policy**

20.    Continental Western issued Commercial General Liability Policy No. HH21021, effective July 13, 2000 to July 13, 2001, to James L. Sloan d/b/a Sloan Electric (the "policy"). Attached hereto as Exhibit B is a true and accurate copy of the policy.

21.    The Coverage A Insuring Agreement of the policy provides, in relevant part, as follows:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   Insuring Agreement

     a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

                         * * *

     b.   This insurance applies to "bodily injury" and "property damage" only if:

          (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

          (2)   The "bodily injury" or "property damage" occurs during the policy period;

22.   The policy contains the following definitions of "occurrence" and "property damage:"

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

23.   Continental Western contends that it does not have a duty to defend or indemnify James Sloan or Sloan Electric, Inc. in connection with the Stonecroft lawsuit. On information and belief, the defendants contend that Continental Western has a duty to defend and indemnify. Therefore, there is an actual controversy between the parties.

**COUNT I**
**(Insuring Agreement)**

24. The allegations of paragraphs 1 through 23 are realleged as though fully set forth herein.

25. Stonecroft's claim does not involve an "occurrence" or "property damage" as defined in the policy.

26. Therefore, Stonecroft's claim does not fall within the Coverage A Insuring Agreement of the policy.

**COUNT II**
**(Exclusion L)**

27. The allegations of paragraphs 1 through 26 are realleged as though fully set forth herein.

28. The policy contains the following definition of "your work:"

"Your work:"

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work,"

(2) The providing of or failure to provide warnings or instructions.

29. Exclusion L of the policy provides as follows:

This insurance does not apply to:

L. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

30. Even were it assumed that Stonecroft's claim involves an "occurrence" and "property damage" and falls within the Coverage A Insuring Agreement, which Continental Western denies, Exclusion L precludes coverage for Stonecroft's claim.

**COUNT III**
**(Exclusion M)**

31. The allegations of paragraphs 1 through 30 are realleged as though fully set forth herein.

32. The policy contains the following definition of "impaired property:"

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

c. you have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

b. Your fulfilling the terms of the contract or agreement.

33. Exclusion M of the policy provides as follows:

This insurance does not apply to:

M. Damage To Impaired Property Or Property Not Pnysically Injured

"Property damage" to "Impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "you r work" after it has been put to its intended use.

34. Even were it assumed that Stonecroft's claim involves an "occurrence" and "property damage" and falls within the Coverage A Insuring Agreement, which Continental Western denies, Exclusion M precludes coverage for Stonecroft's claim.

**COUNT IV**
**(Exclusion A)**

35. The allegations of paragraphs 1 through 34 are realleged as though fully set forth herein.

36. Exclusion A of the policy provides as follows:

This insurance does not apply to:

A. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

37. Even were it assumed that Stonecroft's claim involves an "occurrence" and "property damage" and falls within the Coverage A Insuring Agreement, which Continental Western denies, Exclusion A precludes coverage for Stonecroft's claim, as Stonecroft's "property damage" was expected from the standpoint of Sloane and/or Sloane Electric.

Wherefore, Continental Western Insurance Company respectfully requests that the Court enter judgment in favor of Continental Western and against the defendants herein, and that the Court declare that Continental Western has no duty to defend or indemnify Sloan Electric, Inc.,

or James Sloan, in connection with the lawsuit filed by Stonecroft of Mendota, LLC in the

Circuit Court of Dane County, Wisconsin, Case No. 2006CV0719, and that Continental Western

may withdraw from the defense of Sloan Electric, Inc. and James Sloan..

Respectfully submitted,

Continental Western Insurance Company

By:  One of their Attorneys

Jeffrey A. Goldwater, Esq.
Robert A. Chaney, Esq.
Bollinger, Ruberry & Garvey
500 West Madison Street
Suite 2300
Chicago, IL 60661
(312) 466-8000
(312) 466-8001 (fax)

SUMMONS/COMPLAINT

COMPLAINT

STATE OF WISCONSIN CIRCUIT COURT DANE COUNTY
CIVIL DIVISION

---

STONECROFT OF MENDOTA, LLC
3221 Knollwood Way
P. O. Box 45590
Madison, Wisconsin 53744

10067608

Plaintiff,

v. Case No: 08CV0719

SLOAN ELECTRIC, INC.
James Sloan, Registered Agent
1008 Illinois Avenue
Mendota, Illinois 61342

08CV3260
JUDGE ST.EVE
MAGISTRATE JUDGE BROWN

JAMES SLOAN, individually, and
doing business as Sloan Electric
1008 Illinois Avenue
Mendota, Illinois 61342

DAJ

Defendants.

---

**COMPLAINT**

Plaintiff, Stonecroft of Mendota, LLC, by its attorneys, Scott R. Halloin & Associates, S.C., for its complaint for Sloan Electric, Inc. and James Sloan, individually, and doing business as Sloan Electric, alleges:

**Parties**

1. Plaintiff, Stonecroft of Mendota, LLC ("Stonecroft"), is a Wisconsin limited liability corporation in the business of owing senior housing facilities. Stonecroft's offices are located at 3221 Knollwood Way, Madison, Wisconsin 53744.

2. Professional Realty and Development Corporation ("PRDC") is a Wisconsin corporation. PRDC's offices are located at 7609

EXHIBIT
A

Elmwood Avenue, Middleton, Wisconsin. PRDC is a real estate development company, architect and general contractor.

3. Plaintiff Stonecroft contracted with PRDC to serve as the developer and general contractor for a senior housing project at 1700 Burlington Street, Mendota, Illinois (the "Senior Housing Project").

4. Sloan Electric was PRDC's electrical subcontractor for Stonecroft pursuant to an August 14, 2000 contract (the "Subcontract").

5. Sloan Electric was (at the time of the execution of the Subcontract) an unincorporated sole proprietorship. Sloan Electric was and is solely owned by James Sloan, 1008 Illinois Avenue, Mendota, Illinois 61342. At the time of the Project, Mr. Sloan's son, Steve Sloan, was one of Sloan Electric's two electrician employees. The other was Al Engel.

6. Sloan Electric incorporated on April 9, 2001 as "Sloan Electric, Inc.", shortly after its termination for the Senior Housing Project. As of April 9, 2001, Sloan Electric is an Illinois domestic corporation that is currently in default. Sloan Electric's offices are located at 1008 Illinois Avenue, Mendota, Illinois. Upon information and belief, Sloan Electric's employees are Al Engel and Steve Sloan. Sloan Electric, Inc. and James Sloan, individually and doing business as Sloan Electric, shall be referred to as "Sloan

Electric" for the balance of this complaint.

7. The Subcontract was negotiated, prepared and administered by PRDC in Dane County, Wisconsin, consistent with Wisconsin's "theft by contractor" statute and rules. Sloan Electric's Subcontract was reviewed and consented to by Stonecroft in Dane County, Wisconsin. All draw requests which included funds to Sloan Electric were reviewed and processed by Stonecroft in Dane County, Wisconsin. At all times relevant to this dispute, Stonecroft was a Wisconsin limited liability corporation whose business offices were in Dane County, Wisconsin. Sloan Electric traveled to Wisconsin to review and inspect another project for the purposes of verifying its claimed ability to perform the project, and made representations regarding its ability to perform in Wisconsin. Sloan Electric represented that it had the expertise to do the job in Wisconsin.

**Jurisdiction and Venue**

8. Jurisdiction is proper in Wisconsin Circuit Court because Stonecroft is a Wisconsin resident, defendants' misrepresentations occurred in Wisconsin, and this action arises out of a promise made within Wisconsin.

9. Venue is proper in Dane County because it is the county of Plaintiff's residence and some of the actions complained of in Plaintiff's complaint occurred in Dane County.

10. Wisconsin law applies to this dispute because the misrepresentations that are the basis of Plaintiff's complaint occurred in Wisconsin.

**Facts**

11. Sloan Electric was to perform design build electrical work at the Senior Housing Project, which consists of two structures, a 32-unit structure and a 24-unit structure, connected by a central lobby.

12. Sloan Electric represented to Stonecroft that it was a competent commercial electrical contractor familiar with the electric codes that would be relevant to the Senior Housing Project, including the national electrical code.

13. Sloan Electric's representations to Stonecroft were received by Stonecroft in Wisconsin.

14. In paragraph 4.2.1 of the Subcontract between PRDC and Sloan Electric, Slcan Electric also warranted that it would "comply with laws, ordinances, rules, regulations and order of public authorities bearing on performance of the Work of this Subcontract."

15. PRDC requested that Stonecroft consent to Sloan Electric's retention, which Stonecroft granted, making Stonecroft a third-party beneficiary to the Subcontract.

16. Stonecroft's consent to the hiring of Sloan Electric was requested in Wisconsin. Moreover, the representations

described below occurred in Wisconsin.

17. Stonecroft relied upon Sloan Electric's representation in par. 4.2.1 of the Subcontract when it consented to Sloan Electric's retention.

18. In paragraph 4.5.1, Sloan Electric warranted that its work would be "free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents."

19. Sloan Electric's work was not free of defects, and did not conform to the contract documents.

20. Stonecroft relied upon Sloan Electric's representation in par. 4.5.1 of the Subcontract when it consented to Sloan Electric's retention.

21. Under the Subcontract, Sloan Electric warranted that "[t]his warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents."

22. Sloan Electric did not honor, and was incapable of honoring its warranty given the quantity and magnitude of the code violations and Sloan Electric's limited available manpower.

23. Stonecroft relied upon Sloan Electric's representation in the warranty when it consented to Sloan Electric's retention.

24. PRDC hired an electrical inspector (Steve Cihasky of Lang Associates) to inspect Sloan Electric's work on March 5, 2001.

25. On Friday, March 9, 2001, Lang Associates orally reported to PRDC that there appeared to be some significant code violations at the site. It was also discovered that many very serious and dangerous defects existed with Sloan Electric's work which posed a significant health threat to future elderly tenants.

26. Lang Associates identified 39 types of recurring building and fire violations of the National Electrical Code (meaning that the violations recur in each of the 56 units at that building at the project).

27. Sloan Electric's actions damaged real property that is owned by Stonecroft.

28. The majority of the code violations were in locations that had already been covered up by drywall, resulting in substantial rework needing to be performed to correct the code violations.

29. PRDC hired a substitute subcontractor to complete Sloan Electric's work.

30. It took 1,161 man hours and five months to correct Sloan Electric's failure to comply with the National Electrical Code.

31. Stonecroft incurred damages in the amount of $258,195.

**Count I - Injury to Real Property**

32. Stonecroft incorporates all paragraphs of its complaint as if fully set forth herein.

33. This is an action to recover damages for an injury done to real property.

34. Stonecroft's real property, the Senior Housing Project, was injured by Sloan Electric's failure to comply with applicable building codes.

35. Stonecroft discovered that Sloan Electric injured its real property on March 9, 2001, and its cause of action for damage to real property accrued on March 9, 2001.

36. This cause of action has been brought within ten years of the accrual of Stonecroft's cause of action as required by Wis. Stat. Secs. 893.54 and 893.89.

37. This cause of action has been brought within five years of the accrual of Stonecroft's cause of action as required by 735 ILCS 5/13-205.

**Count II - Negligence**

38. Stonecroft incorporates all paragraphs of its complaint as if fully set forth herein.

39. Wisconsin law applies to this claim because Sloan Electric's duty to Stonecroft arises from representations made to Stonecroft in Wisconsin.

40. Sloan Electric owed a duty to Stonecroft to perform its work in a workmanlike manner.

41. Sloan Electric owed a duty to Stonecroft to perform its work free of defects.

42. Sloan Electric owed a duty to Stonecroft to comply with applicable building codes.

43. Sloan Electric was aware that it was working on a senior housing project, and that the residents of the project may have handicaps, and mobility problems, which significantly impaired their ability to evacuate the Senior Housing Project in an event of fire.

44. Sloan Electric breached its duty.

45. Sloan Electric caused injury to Stonecroft's Senior Housing Project and created dangerous conditions.

46. Sloan Electric damaged Stonecroft.

47. Sloan Electric's conduct was in wilful disregard of the health and safety of the Senior Housing Project's future occupants, and for Stonecroft. As such, an award of punitive damages is appropriate and requested.

**Count III - Breach of Implied Warranty**

48. Stonecroft incorporates all paragraphs of its complaint as if fully set forth herein, and in particular, paragraphs 11 - 23 above.

49. Sloan Electric impliedly warranted to Stonecroft that its work would be of a workmanlike quality, free of defects, and compliant with applicable building codes.

50. Sloan Electric breached its implied warranties.

51. Sloan Electric's breaches of its implied warranties damaged

Stonecroft.

52. Wisconsin law applies to this claim, as Sloan Electric made these implied warranties to Stonecroft in Wisconsin.

**Count IV - Fraud (Intentional, Strict and Negligent Misrepresentation and Fraudulent Concealment)**

53. Stonecroft incorporates all paragraphs of its complaint as if fully set forth herein, and in particular, paragraphs 11 - 23 above.

54. Sloan Electric's representations of fact to Stonecroft were false.

55. Stonecroft believed and relied on Sloan Electric's misrepresentations to Stonecroft's detriment or damage.

56. Sloan Electric had an economic interest in the transaction.

57. Sloan Electric made the misrepresentations with knowledge that they were false, recklessly without caring whether it was true or false, or negligently.

58. Sloan Electric made the misrepresentations with intent to deceive and to induce Stonecroft to act on it to his detriment or damage.

59. Sloan Electric fraudulently concealed its building code violations and non-workmanlike work in areas that were not open, exposed and accessible, and which were often behind drywalled areas.

60. Stonecroft discovered Sloan Electric's fraudulently concealed

conditions on March 9, 2001, and has filed this action within 5 years of Stonecroft's discovery of said conditions as required by 735 ILCS 5/13-215, and within 6 years of Stonecroft's discovery of said conditions as required by Wis. Stat. Sec. 893.93.

Wherefore, Stonecroft requests that the Court enter judgment in its favor, and against Sloan Electric, in the amount that fully compensates Stonecroft for its injuries, plus contractual attorneys fees and costs.

Dated March 2, 2006.

Scott R. Halloin & Associates, S.C.
Attorneys for Stonecroft Village of Mendota, LLC

By: [signature]
Scott R. Halloin
State Bar No. 1024669

Scott R. Halloin & Associates, S.C.
1245 North Water Street, Second Floor
Milwaukee, Wisconsin 53202
Main Number: 414-732-2424
Main Facsimile: 414-732-2422

S:\Clients\PRDC\SLOAN ELECTRIC\PLEADINGS\Complaint2.wpd



**CONTINENTAL WESTERN INSURANCE COMPANY**
11201 Douglas, Box 1594 Des Moines, IA 50306
COMMERCIAL GENERAL LIABILITY
RENEWAL DECLARATION

POLICY NO. HH21021
PREV POLICY NO HH21021

REFERENCE NO. 03- 091001-0/000
RENEWAL OF 03- 091001-9

NAMED INSURED AND MAILING ADDRESS

SLOAN ELECTRIC
JAMES L SLOAN DBA
1008 ILLINOIS AVE
MENDOTA, IL 61342

AGENCY AND MAILING ADDRESS 02466122

MILLER-ROWE INS AGCY
BOX 180
EARLVILLE, IL 60518

POLICY PERIOD: From 07/13/00 to 07/13/01 12:01 A.M. AT THE INSURED'S MAILING ADDRESS
THE NAMED INSURED IS : INDIVIDUAL BUSINESS DESC : ELECTRICAL SERVICE CONTRACTOR

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| GENERAL AGGREGATE | $ 2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE | $ 2,000,000 | |
| PERSONAL INJURY & ADVERTISING INJURY | $ 1,000,000 | |
| EACH OCCURRENCE | $ 1,000,000 | |
| FIRE DAMAGE | $ 250,000 | ANY ONE FIRE |
| MEDICAL EXPENSE | $ 5,000 | ANY ONE PERSON |

**AUDIT PERIOD:** ANNUAL

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**
LOC # 1: R1008 ILLINOIS AVE MENDOTA (LASALLE) IL 61342

| LOC | CLASSIFICATION | CODE | PREMIUM BASIS | | PMS RATE | PDTS RATE |
|---|---|---|---|---|---|---|
| 1 | ELECTRICAL WORK - WITHIN BUILDINGS | 92478 | PAYROLL | 20,000 | 2.786 | .940 |

MANUSCRIPT FORMS:

CW682 (01-96) PROPERTY DAMAGE: CARE, CUSTODY OR CONTROL ENDORSEMENT
CLASSIFICATION: PER CONTRACTORS LIABILITY SCHEDULE PREMIUM: INCLUDED
CW681 (01-96) VOLUNTARY PROPERTY DAMAGE ENDORSEMENT
CLASSIFICATION: PER CONTRACTORS LIABILITY SCHEDULE PREMIUM: INCLUDED

EXHIBIT
tabbles
B

I certify this is a true & exact copy of
Policy # HH 210-21
Myrna Haig 4-1-08
Administrative Supervisor



**CONTINENTAL WESTERN INSURANCE COMPANY**

11201 Douglas, Box 1594 Des Moines, IA 50306

COMMERCIAL GENERAL LIABILITY
RENEWAL DECLARATION

| POLICY NO. HH21021<br>PREV POLICY NO HH21021 | REFERENCE NO. 03- 091001-0/000<br>RENEWAL OF 03- 091001-9 |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS 02466122 |
|---|---|
| SLOAN ELECTRIC<br>JAMES L SLOAN DBA<br>1008 ILLINOIS AVE<br>MENDOTA, IL 61342 | MILLER-ROWE INS AGCY<br>BOX 180<br>EARLVILLE, IL 60518 |

POLICY PERIOD: From 07/13/00 to 07/13/01 12:01 A.M. AT THE INSURED'S MAILING ADDRESS

~~ESTIMATED COMMERCIAL GENERAL LIABILITY PREMIUM $250~~

**FORMS AND ENDORSEMENTS**

APPLYING TO COMMERCIAL GENERAL LIABILITY COVERAGE PART AND MADE PART OF THIS POLICY AT TIME OF ISSUE:

CW1019 (10-90) CW2269 (08-98) IL0021 (04-98) CW190(2)(1-92) IL0017 (11-98) CG0001 (07-98)
CG2147 (07-98) CG2150 (09-89) CG0200 (04-87) CG2243 (07-98) CG2155 (07-98) CW682 (01-96)
CW681 (01-96)

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED AT: ______________ DATE: ________ BY: ______________

AUTHORIZED REPRESENTATIVE

CERTIFIED COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS AND/OR ASBESTOS PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS COMPLETED OPERATIONS LIABILITY COVERAGE PART

"This policy does not apply to:

(1) "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos; or

~~(2) The costs of abatement, mitigation, removal or disposal of~~ asbestos.

This exclusion also includes:

(a) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

(b) Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage; and

(c) Payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or suit related to any of the above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
~~LIQUOR LIABILITY COVERAGE PART~~
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

 Copyright, Insurance Services Office, Inc., 1997

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 Copyright, Insurance Services Office, Inc., 1997

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998  □

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

 Copyright, Insurance Services Office, Inc., 1997

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

 Copyright, Insurance Services Office, Inc., 1997

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

 Copyright, Insurance Services Office, Inc., 1997

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion ~~applies only to liability assumed under a con-~~ tract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

 Copyright, Insurance Services Office, Inc., 1997

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** Arising out of a criminal act committed by or at the direction of any insured;

**(5)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(8)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(9)** Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

**(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 1997

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage **A.**

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C;**

   b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A;** and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

 Copyright, Insurance Services Office, Inc., 1997

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

 Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

 Copyright, Insurance Services Office, Inc., 1997

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in **a.** above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

Copyright, Insurance Services Office, Inc., 1997

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1997

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, Insurance Services Office, Inc., 1997

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

**c.** "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(a)** Requires a license;

**(b)** Is for the purpose of financial gain or livelihood; or

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

Copyright, Insurance Services Office, Inc., 1988

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. CANCELLATION (Common Policy Conditions) is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2.a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

(1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

(2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium;

b. The policy was obtained through a material misrepresentation;

c. Any insured has violated any of the terms and conditions of the policy;

d. The risk originally accepted has measurably increased;

e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. The following is added and supersedes any provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

a. You; and

b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

a. On the expiration date if:

(1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

(2) We have indicated our willingness to renew this policy to you or your representative; or

(3) You have notified us or our agent that you do not want to renew this policy.

b. On the effective date of any other insurance replacing this policy.

C. Mailing of Notices

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

 Copyright, Insurance Services Office, Inc., 1987

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**2.** Supervisory, inspection, architectural or engineering activities.

 Copyright, Insurance Services Office, Inc., 1997  □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Coverage A – Bodily Injury And Property Damage Liability (Section I – Coverages)** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1997  □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROPERTY DAMAGE, CARE, CUSTODY OR CONTROL ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

| Classification | Code | Premium Bases | Rate | Premium |
|---|---|---|---|---|
| | | (p) Payroll | Per $1,000 of Payroll | (For Period Shown) |
| Independent Contractors | | Cost | Per $1,000 of Cost | |
| Minimum Premium $ | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

It is agreed that subsection (3 and 4) of Exclusion (j) is deleted and coverage is extended to property damage to property which is in your care, custody or control or property over which you are for any purpose exercising physical control if such property damage arises out of ~~installation, repair, alteration or other operations away from your premises, and which is incidental to your business,~~ subject to the following additional provisions.

## EXCLUSIONS

This extension of insurance does not apply to:

(a) injury or destruction of property, (1) held by you for servicing, repair, storage or sale at premises (or the ways adjacent thereto) owned, rented, leased, operated or used by you, or (2) owned by, rented to, leased to, borrowed by or used by you;

(b) injury to or destruction of property caused by or arising out of (1) the explosion hazard, (2) the collapse hazard, or (3) the underground property damage hazard;

(c) the cost of repairing or replacing (1) any work defectively or incorrectly performed or completed by you or your subcontractor, (2) any product manufactured, sold or supplied by you or your subcontractor or any work completed by you or your subcontractor, unless the damage is caused directly by you after delivery of the product or completion of the work and resulting from a subsequent undertaking, or (3) any product manufactured, sold, handled or distributed by you or a concessionaire or any work completed by you or your subcontractor because of a warranty of such product or work;

(d) the cost of repairing or replacing any property because of the liability of others assumed by you under any contract or agreement;

(e) injury to or destruction of property caused by or arising out of operations of your independent contractors; provided, this exclusion does not apply to property damage caused by independent contractors which would be otherwise covered by the policy in the absence of this endorsement.

## PROVISIONS

In the event of loss covered by this endorsement, you shall, if requested by us, replace the property or furnish the labor and materials necessary for repairs thereto, at actual cost to you, excluding the prospective profit or overhead charges of any nature.

If any other insurance carried by you applies to a loss covered by this endorsement, the insurance under this endorsement shall apply only as excess insurance over such other insurance.

This endorsement applies only to occurrences taking place on or after the effective date of this endorsement and prior to the end of the policy period of the policy.

## DEDUCTIBLE

$250 shall be deducted from the total amount of all sums which you shall become legally obligated to pay as damages due to property damage to property in your care, custody or control or property as to which you are for any purpose exercising physical control, as the result of any one occurrence, unless the policy to which this coverage is afforded carries a property damage liability deductible greater than $250, in which case the higher deductible will apply.

The terms of the policy with respect to notice of occurrence and our right to investigate, negotiate and settle any claim or suit, apply regardless of the application of the deductible amount.

We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## LIMITS OF LIABILITY

Our liability under this endorsement for all damages arising out any one occurrence is limited to $5,000, and subject to such limit for each occurrence, our total aggregate liability under this endorsement for all damages is limited to $10,000.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## VOLUNTARY PROPERTY DAMAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

| SCHEDULE | | | | |
|---|---|---|---|---|
| **CLASSIFICATION** | **CODE** | **PREMIUM BASES** | **RATE** | **PREMIUM** |
| | | (p) Payroll | Per $1000 of Payroll | (For Period Shown) |
| Independent Contractors | | Cost | Per $1000 of Cost | |
| Minimum Premium $ | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

We agree with you to pay at your request for loss of property of others caused by you, or while in your possession, and arising out of operations away from your premises and incidental to your business described by and covered by the policy of which this endorsement forms a part, subject to the following provisions:

"Loss" means unintentional damage or destruction but does not include disappearance, abstraction or loss of use.

### EXCLUSIONS

This insurance does not apply to:

(a) injury to or destruction of property, (1) held by you for servicing, repair, storage or sale at premises (or the ways adjacent thereto) owned, rented, leased, operated or used by you, or (2) owned by, rented to, leased to, borrowed by or used by you;

(b) injury to or destruction of property caused by or arising out of (1) the explosion hazard, (2) the collapse hazard, or (3) the underground property damage hazard;

(c) the cost of repairing or replacing (1) any work defectively or incorrectly performed or completed by you or your sub-contractor, (2) any product manufactured, sold or supplied by you or your sub-contractor or any work completed by you or your sub-contractor, unless the damage is caused directly by you after delivery of the product or completion of the work and resulting from a subsequent undertaking, or (3) any product manufactured, sold, handled or distributed by you or a concessionaire or any work completed by you or your sub-contractor because of a warranty of such product or work;

(d) the cost of repairing or replacing any property because of the liability of others assumed by you under any contract or agreement;

(e) injury to or destruction of property caused by or arising out of operations of your independent contractors: provided, this exclusion does not apply such operations for you by independent contractors as are covered by the policy for Property Damage Liability insurance;

(f) to injury to or destruction of property caused by or arising out of the "Products-completed operations hazard" as defined.

### PROVISIONS

In the event of loss covered by this endorsement, you shall, if requested by us, replace the property or furnish the labor and materials necessary for repairs thereto, at actual cost to you, excluding the prospective profit or overhead charges of any nature.

If any other insurance carried by you applies to a loss covered by this endorsement, the insurance under this endorsement shall apply only as excess insurance over such other insurance.

### DEDUCTIBLE

The insurance under this endorsement is subject to a $250 deductible per loss.

### LIMITS OF LIABILITY

Our liability under this endorsement for loss of property arising out of any one occurrence is limited to $5,000, and subject to such limit for each occurrence, our total aggregate liability under this endorsement for all damages is limited to $10,000.

# CONTRACTORS POLICY

CONTINENTAL WESTERN INSURANCE COMPANY

CONTINENTAL WESTERN CASUALTY COMPANY

11201 Douglas Ave., Box 1594, Des Moines, Iowa 50306

Phone (515) 278-3000

THIS POLICY CONSISTS OF:

— DECLARATIONS
— COMMON POLICY CONDITIONS
— ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
- ONE OR MORE COVERAGE FORMS
- APPLICABLE FORMS AND ENDORSEMENTS

In witness whereof, the CONTINENTAL WESTERN INSURANCE COMPANY has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company if required by state law.

John F. Thelen Secretary

Shelby L. Jones President

In witness whereof, the CONTINENTAL WESTERN CASUALTY COMPANY has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company if required by state law.

John F. Thelen Secretary

Shelby L. Jones President